**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JASON KOKINDA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:17-cv-00217 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | |
| ROBERT GILMORE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION**

**Mark R. Hornak, United States District Judge**

Now pending before the Court is Defendants' Motion for Summary Judgment, ECF No. 285. Plaintiff has two surviving claims arising from his time in custody in the Pennsylvania prison system against a total of four defendants: (1) the Plaintiff's First Amendment retaliation claim against Sergeant Gibson and Correctional Officer W. Sanders, and (2) the Plaintiff's Eighth Amendment conditions of confinement claim against Robert Gilmore and Registered Nurse K. Mills. (ECF No. 279, at 1–2). For the reasons that follow, Defendants' Motion is granted in full, and summary judgment is entered in favor of the Defendants and against the Plaintiff as to all claims remaining in this action.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To evaluate a motion for summary judgment, the Court must view "the evidence in the light most favorable to the nonmoving party and draw[] all inferences in favor of that party[.]" *Woodson v. Sheesley*, No. 23-2942, 2025 WL 2159091, at *1

(3d Cir. July 30, 2025) (citing *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 422–23 (3d Cir. 2006)). Under Rule 56, an issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court may consider all of the materials in the record including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

The Court must liberally construe submissions in cases involving pro se litigants such as the Plaintiff. *Hena v. Vandergrift*, 612 F. Supp. 3d 457, 472 (W.D. Pa. 2020). However, "the same summary judgment standard applies to pro se litigants." *Id.* (quoting *Dinnerstein v. Burlington Cnty. Coll.*, No. 1:13-cv-5598, 2017 WL 5593776, at *4 (D.N.J. Nov. 21, 2017), *aff'd*, 764 F. App'x 214 (3d Cir. 2019) (unreported)). And "'[b]ald assertions' unsubstantiated by record evidence will not defeat a well-supported motion for summary judgment." *Hena,* 612 F. Supp. 3d at 472 (quoting *Dinnerstein*, 2017 WL 5593776, at *4) (cleaned up). Rather, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Bickle v. Seiberling*, 87 F. App'x 816, 817 (3d Cir. 2004) (unreported). "[A] mere 'scintilla of evidence' in the nonmovant's favor does not create a genuine issue of fact, nor does speculation or conjecture defeat a motion for summary judgment." *Power v. Hewlett-Packard Co.*, No. 2:17-cv-00154, 2024 WL 4040432, at *4 (W.D. Pa. July 19, 2024) (quoting *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016)).

## II. FACTUAL BACKGROUND

The Plaintiff's Complaint arises out of treatment he allegedly experienced while he was an inmate at State Correctional Institute-Greene ("SCI-Greene"). Particularly, Plaintiff points to his treatment directly before and during his time in the Restrictive Housing Unit ("RHU") at that institution from February 20, 2015 to March 11, 2015.

Plaintiff alleges that he was charged with a "misconduct" as retaliation for a lawsuit he had previously filed against various state actors and for a grievance he had filed at SCI-Greene. Plaintiff further claims that he was starved while in the RHU because the Defendants — and other prison officials not named in this suit — refused to provide him with a soy-free diet.

In order to assist the reader in understanding the Court's reasoning, and at the risk of some level of extra length of this Opinion, some of the relevant record facts are as necessary repeated in the below sections of this Opinion.

### A. Misconduct Charge

Dates are relevant here. Plaintiff filed a separate federal lawsuit in this Court and against various Pennsylvania Commonwealth officials on February 10, 2015. *See Kokinda v. Jin*, 2:15-cv-00179 (W.D. Pa. Feb. 10, 2015). That lawsuit, much like the present one, alleged that Plaintiff was being mistreated by prison officials at numerous State Correctional Institutions. Less than a week after that lawsuit was filed, Plaintiff filed a grievance against various SCI-Greene officials, which was received by SCI-Greene on February 17, 2015. (ECF No. 287-11, at 2).

Three days later, during an investigative search of Plaintiff's cell, certain writings were found and confiscated. (ECF No. 286, at 2). Plaintiff contends that it was Defendant Gibson and Defendant Sanders who searched his cell that day. (ECF No. 290-1, at 12).[1] While Plaintiff denies

[1] Defendants Gibson and Sanders are both Correctional Officers who were at all times relevant to the instant action employed by the Pennsylvania Department of Corrections and working at SCI-Greene. (ECF No. 286, at 2).

having circulated these writings to other inmates (ECF No. 290-2, at 1), he admits to sitting down with other inmates in the law library at SCI-Greene to discuss the writings and having those inmates cross out and change statements in the writings with which they did not agree. (ECF No. 290-1, at 11). Plaintiff also stated in one of his various filings related to the pending summary judgment Motion that he did provide the writings to at least one other inmate. (*Id.*). After these writings were found in his cell, Plaintiff was transferred to the RHU on February 23, 2015. (ECF No. 287-3, at 3).

This incident resulted in Plaintiff being charged with the following institutional misconducts: (1) possession/circulation of an unauthorized petition; (2) engaging in or encouraging group activity; (3) possession of contraband property of another; (4) possession of any item not authorized for retention not specifically enumerated as Class 1 contraband; and (5) any violation of a rule or regulation not specified as a Class 1 Charge. (ECF No. 287-1, at 2). The Reporting Staff Member is not a party to this lawsuit, but Defendant Sanders was included in the Misconduct Report as a witness. (*Id.*). The Misconduct Report makes no mention of Defendant Gibson.[2]

On February 26, 2015, a Disciplinary Hearing was held to adjudicate Plaintiff's misconduct charges. (ECF No. 287-4, at 3). Plaintiff pled not guilty to each charge. (*Id.*). The Hearing Examiner ("HEX") considered Plaintiff's own given statement in rendering her decision. (*Id.*). Specifically, the HEX considered Plaintiff's statements that he "made affidavits and asked inmates if they wanted to be a witness in his lawsuit …. He got about a dozen [inmates] to sign and took them back to his cell[.]" (*Id.*). After continuing the hearing to review the evidence, the HEX found Plaintiff guilty of engaging in or encouraging group activity and dismissed the remaining charges.

[2] The only evidence connecting Defendant Gibson to Plaintiff's misconduct charge is Plaintiff's unsubstantiated contention that Defendant Gibson searched Plaintiff's cell on February 20, 2015. (ECF No. 290-1, at 12).

(*Id.*). The HEX included a statement with her decision, noting "[t]he fact that other[s] have accepted [Plaintiff's] solicitation and have signed the form letter indicat[ed] active participation in an unauthorized group activity. These form letters were found in [Plaintiff's] property and he admits to making and circulating them." (*Id.*).

On the same day that the Disciplinary Hearing was held, Plaintiff filed another grievance claiming that his cell was searched and he was transferred to the RHU as retaliation for filing his February 2015 federal lawsuit and the February 12, 2015 grievance. (ECF No. 287-7, at 2). In that later grievance, Plaintiff stated that "two unidentified COs" searched his cell on February 20, 2015, leading to his transfer to the RHU. (*Id.*).

### B. <u>Plaintiff's Medical Treatment While in the RHU</u>

Before Plaintiff was transferred to the RHU, he was seen by the Medical Doctor at SCI-Greene, Dr. Byunghak Jin. (ECF No. 290-1, at 36). Dr. Jin — who is not a party to this lawsuit — first evaluated Plaintiff on September 10, 2014. (*Id.*). Dr. Jin's assessment was that Plaintiff had a soy intolerance and that because he was a healthy weight, there was no reason to order a medical restriction on his diet. (*Id.*, at 37).

On December 12, 2014, Defendant Gilmore[3] responded to a grievance that Plaintiff had filed related to Dr. Jin's refusal to order Plaintiff a "no soy" diet. (ECF No. 290-1, at 33). In denying Plaintiff's soy-related grievance, Defendant Gilmore noted that Dr. Jin evaluated Plaintiff in September, 2014, Plaintiff was assessed to have a soy intolerance — not a soy allergy — and

[3] Defendant Robert Gilmore was at all relevant times the Superintendent of SCI-Greene and employed by the Pennsylvania Department of Corrections. (ECF No. 286, at 2).

Plaintiff was considered to be a healthy weight. (*Id.*). A few months later, Plaintiff was transferred to the RHU and renewed his pleas for a soy-free diet.

On his second day in the RHU, Plaintiff was seen by Defendant Nurse Mills at 2:15 AM. (ECF No. 287-2, at 3). Defendant Mills noted that Plaintiff shared with her that he had not "eaten anything for 4 days" and that he is weak and needed an IV. (*Id.*). Defendant Mills attempted to ask Plaintiff if there was milk, fruit, or vegetables on his tray that he could eat. (*Id.*). While Defendant Mills noted that Plaintiff did not respond, Plaintiff denies the allegation that he did not respond to Defendant Mills' questioning. (ECF Nos. 287-2, at 3, 290-2, at 2). This evaluation concluded with Defendant Mills prescribing Plaintiff with Ibuprofen and Tums and returning him to his cell. (ECF No. 287-2, at 3). Before doing so, Defendant Mills noted that Plaintiff was already on "sick call for today[,]" meaning, he would be seen (and he was so seen) by another medical professional later that day. (*Id.*).

Plaintiff also alleges that Defendant Mills "said that the guards were already falsely marking that [he] was eating the trays" of food that he was provided in the RHU. (ECF No. 290-1, at 15). This statement is not reflected in Defendant Mills Progress Notes.[4]

That same day, Plaintiff was evaluated by another medical professional, Elon Mwaura.[5] (ECF No. 287-2, at 4). Plaintiff told Mwaura that he needed a soy-free diet and Mwaura advised him that a soy-free diet was unnecessary. (*Id.*). About two weeks later, Plaintiff was seen by

[4] The only reference in the record addressing whether Plaintiff was eating his trays of food in the RHU — besides Plaintiff's allegation — comes from Psychological Services Associate ("PSA") Fredrick F. Waine Jr., who is not a party to this lawsuit. PSA Waine noted that the correctional officers had stated that Plaintiff's trays had been checked and that Plaintiff had been eating. (ECF No. 287-2, at 5).

[5] Summary judgment was granted to Mwaura on December 28, 2022. (ECF No. 197).

Mwaura again, who evaluated Plaintiff, weighed him, and determined that he was a healthy weight of 178 pounds. (*Id.*).

While Plaintiff was in the RHU, Plaintiff's mother called Defendant Gilmore regarding Plaintiff's diet and his then-current condition. (ECF No. 290-1, at 23–24). In response to Plaintiff's mother's concerns, Defendant Gilmore allegedly stated that Plaintiff "is a grown man and can decide for himself whether or not he wants to eat." (*Id.*, at 24). Defendant Gilmore then allegedly said that prison officials "would force a feeding tube down [Plaintiff]'s throat if he lost enough weight[.]" (*Id.*). The record does not reflect that any such force feeding ever happened.

Plaintiff was released from the RHU on March 11, 2015. (ECF No. 287-3, at 3).

### C. <u>Prior Litigation</u>

As noted above, on February 10, 2015, Plaintiff filed a federal lawsuit against seventeen defendants, including Dr. Jin. *Kokinda v. Jin, et al.*, 2:15-cv-00179, ECF No. 12 (W.D. Pa. Feb. 10, 2015). In that lawsuit, Plaintiff alleged that he was being mistreated by various prison medical professionals across a number of Pennsylvania Correctional Institutions. His sole contention was that the defendants had failed to provide him with a "no soy" diet despite his alleged soy allergy. *Id.* at ECF No. 15, at 3. However, Plaintiff failed to pay the initial partial filing fee in this Court as required by the Prison Litigation Reform Act and that action was administratively closed without ever being re-opened. *Id.* at ECF No. 16.

Plaintiff's next federal lawsuit in this Court was filed on August 26, 2016. *Kokinda v. Pa. Dep't of Corrs.* (*Kokinda* I), 2:16-cv-01303 (W.D. Pa. Aug. 26, 2016). That suit was initially filed against twelve defendants, including Defendant Robert Gilmore. *Id.* at ECF No. 3, at 1–2. Of the various claims included in that lawsuit, one was an Eighth Amendment conditions of confinement claim, again stemming from defendants at SCI-Greene denying Plaintiff a soy-free diet. *Id.* at ECF

No. 3, at 3. Summary judgment was eventually granted to all defendants in that case, including on the conditions of confinement claim because, among other reasons, "there [was] no genuine dispute of material fact that Mr. Kokinda was not suffering from a sufficiently serious medical condition." *Id*. at ECF No. 173, at 16.

Plaintiff tried once more to prevail over various SCI-Greene defendants on his conditions of confinement claim in yet another lawsuit in this Court styled *Kokinda v. Pa. Dept' of Corrs*. (*Kokinda* II), 2:15-cv-01593 (W.D. Pa. Dec. 7, 2015). However, in that case, the Court found that Plaintiff's conditions of confinement claim was barred by issue preclusion because it had already been decided in *Kokinda* I. *Kokinda* II, ECF No. 84, at 17. That decision was subsequently affirmed on appeal by the United States Court of Appeals for the Third Circuit. *See Kokinda v. Pa. Dept. of Corrs.*, 803 F. App'x 574 (3d Cir. 2020) (unreported).

That brings us to the present case.

## III. PROCEDURAL HISTORY

Plaintiff filed the instant action on February 16, 2017 against a total of fifty-nine Defendants. (ECF No. 3, at 5). On April 4, 2017, thirty-seven Defendants were dismissed from the action and Plaintiff was allowed to proceed with his First Amendment retaliation claim, Eighth Amendment claim, Fourteenth Amendment procedural due process claim, Fourteenth Amendment

equal protection claim, and Americans with Disabilities Act claim against seven total Defendants. (ECF No. 14, at 2).

On May 3, 2019, the Court dismissed with prejudice another round of Plaintiff's claims, leaving only Plaintiff's Eighth Amendment claims against Defendants Gilmore and Mills and Plaintiff's First Amendment claim against Defendants Gibson and Sanders. (ECF No. 104, at 3).

The next relevant filing in this case comes six years later, when the remaining Defendants filed a Motion for Leave to File a Motion for Summary Judgment. (ECF No. 270). The original deadline for Motions for Summary Judgment had passed on May 5, 2022. (ECF No. 182). However, the undersigned granted the Defendants' Motion for Leave to File a Motion for Summary Judgment in no small part because of the confusion and delay that Plaintiff himself has caused for everyone involved in this litigation. In granting that Motion, the undersigned recounted the many reasons for the extensive Plaintiff-generated delay that the present litigation has faced:

> Upon the matter being referred back to the undersigned, the Plaintiff resumed his copious, repetitive, and untimely motions practice. From September 9, 2024, through — most recently — February 18, 2026, the Plaintiff has filed a litany of motions, including for reconsideration, for alteration of judgment, to supplement his FAC, and so on. (*See*, *e.g.*, ECF Nos. 228, 239, 245, 248, 252, 257, 262). The Court considered and denied each of these on their own merits, most recently on December 19, 2025. (ECF No. 269; *see also*, *e.g.*, ECF No. 256 ("The instant motion is Plaintiff's eighth attempt to get the Court to revise its Orders at ECF Nos. 14 and 17," dated September 18, 2025). The similar pending motion, (ECF No. 280), referenced above, appears to be the eleventh of its ilk — and that is not counting those motions that he filed before Judge Eddy on much of the same "substantive" grounds before this matter was referred back to the undersigned. The Plaintiff's motions practice has persisted in a "wash, rinse, and repeat" fashion.
>
> Throughout all of this time, there were periods in which it was difficult if not impossible to get in contact with the Plaintiff because no updated address was on file or for other reasons. (*See*, *e.g.*, ECF Nos. 221, 224). And as is clear from the Fourth Circuit's summary of events in the past twenty years involving the Plaintiff, some of those reasons were plainly related to the periods of time in which the Plaintiff was serving time in state or federal prison. The Plaintiff's insistence on barraging the Court with meritless motions — combined with extended and repeated stints of non-responsiveness due to incarceration and unauthorized travel

> — has prevented this case from coming to resolution. All in all, for going on nine years now, the Plaintiff has used his own interactions with the judicial process outside of this case, combined with his being essentially "missing in action" for extended periods, to keep the Defendants awaiting a resolution to the Plaintiff's surviving claims against them whilst seemingly requiring both the Court and Defendants to bend to his schedule.

(ECF No. 282, at 6–7).

The Defendants' Motion for Leave to File a Motion for Summary Judgment was subsequently granted, giving them thirty days to file an MSJ. (ECF No. 282). Defendants' MSJ was filed on June 18, 2026 and Plaintiff filed his Response to Defendants' MSJ on July 18, 2026. (ECF Nos. 285, 290). The Defendants' Motion is now ripe for resolution by this Court.

## IV. DISCUSSION

Plaintiff has two surviving claims against a total of four defendants: (1) the Plaintiff's First Amendment retaliation claim against Sergeant Gibson and Correctional Officer W. Sanders, and (2) the Plaintiff's Eighth Amendment conditions of confinement claim against Robert Gilmore and RN K. Mills. (ECF No. 279, at 1–2).

### A. Eighth Amendment Conditions of Confinement

The Eighth Amendment's prohibition of "cruel and unusual punishments" imposes duties on prison officials to "provide humane conditions of confinement[.]" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). This includes "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care[.]" *Id.*

"[P]rison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or interfering with the treatment once prescribed.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526,

534 (3d Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Thus, there is both an objective and a subject element to an Eighth Amendment conditions of confinement claim.

First, the plaintiff must have an objectively serious medical need that poses "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. And second, the plaintiff must show deliberate indifference by the prison official to this serious medical need. As the Supreme Court held:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.

*Id*. at 837. "Allegations of medical malpractice are not sufficient to establish a Constitutional violation." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). And importantly, "'[m]ere disagreement as to the proper medical treatment' is also insufficient." *Id*. (quoting *Monmouth Cnty Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988)).

### 1. Issue Preclusion

Defendants argue that Plaintiff's Eighth Amendment conditions of confinement claim is barred by issue preclusion.

Generally, issue preclusion must be raised as an affirmative defense in an answer. *See Arizona v. California*, 530 U.S. 392, 412 (2000). However, a court may also raise issue preclusion "in special circumstances." *Id*. "Special circumstances" exist when "a court is on notice that it has previously decided the issue presented ... even though the defense has not been raised." *Id*. (quoting *United States v. Sioux Nation*, 448 U.S. 371, 432 (1980) (REHNQUIST, J., dissenting)).

Defendants do not dispute that they did not raise issue preclusion as an affirmative defense in their pleadings in this case. (*See* ECF No. 52). They do, however, ask the Court to address issue

preclusion here, and decide the Eighth Amendment conditions of confinement claim on those grounds. (ECF No. 288, at 6).

This case is a special circumstance and the Court will therefore apply that principle to this case.

The Court is on notice that it has previously decided an issue advanced by Plaintiff, and thus, may raise issue preclusion at this stage of the proceedings. *See Arizona*, 530 U.S. at 412; *Dover v. Laskoskie*, No. 21-2678, 2022 WL 1576759, at *2 (3d Cir. May 19, 2022) (unreported) (approving District Court's sua sponte use of res judicata). In *Kokinda v. Pa. Dep't of Corrs.* (*Kokinda* I), 2:16-cv-01303 (W.D. Pa. Aug. 26, 2016), the Court adopted as the Opinion of the Court a Report and Recommendation ("R. & R.") granting summary judgment to defendants in that case.[6] 2:16-cv-01303, ECF No. 176. Among the various claims in *Kokinda* I was an Eighth Amendment conditions of confinement claim. 2:16-cv-01303, ECF No. 173. The R. & R. recommended summary judgment be granted to defendants on that claim because, among other things, "there [was] no genuine dispute of material fact that Mr. Kokinda was not suffering from a sufficiently serious medical condition." *Id*., at 16.

The Eighth Amendment conditions of confinement claim in *Kokinda* I was largely based on various defendants at SCI-Greene denying Plaintiff a soy-free diet. 2:16-cv-01303, ECF No. 33, at 2. According to Plaintiff, this alleged mistreatment occurred between the dates of September 3, 2014 and November 1, 2015. *Id*. The reader will remember that in this case, Plaintiff is alleging that he was denied a soy-free diet, causing him to suffer structural starvation at SCI-Greene between the dates of February 23, 2015 to March 11, 2015 — smack-dab in the middle of the dates of Plaintiff's alleged mistreatment in *Kokinda* I. It follows that if the Court concluded in *Kokinda*

---

[6] Among the many defendants in *Kokinda* I, was Robert Gilmore, who is a defendant in the present action, as well. However, the mutuality of defendants between *Kokinda* I and the present case ends there.

I that Plaintiff did not have a serious medical condition between the dates of September 3, 2014 and November 1, 2015, then Plaintiff could not have had a serious medical condition between the dates of February 23, 2015 and March 11, 2015.

Importantly for these purposes, this is not the first time the Court would find that Plaintiff's conditions of confinement claims were barred by issue preclusion. In fact, in *Kokinda v. Pa. Dept' of Corrs*. (*Kokinda* II), 2:15-cv-01593 (W.D. Pa. Dec. 7, 2015), the Court adopted as the Opinion of the Court an R. & R. dismissing Plaintiff's Eighth Amendment conditions of confinement claim on issue preclusion grounds. *Kokinda* II, 2:15-cv-01593, ECF Nos. 84, 87. That decision — including the decision to raise issue preclusion sua sponte — was affirmed by the Third Circuit in *Kokinda v. Pa. Dep't of Corrs.*, 803 F. App'x 574, 577, n.3 (3d Cir. 2020) (unreported). Plaintiff has brought this conditions of confinement claim before this Court, albeit against new defendants, once again.

Because the Court concludes this is a "special circumstance," the Court will now consider the application of the doctrine of issue preclusion to Plaintiff's Eighth Amendment conditions of confinement claim. *See Arizona*, 530 U.S. at 412; *Dover*, 2022 WL 1576759, at *2 (approving District Court's sua sponte use of res judicata "[g]iven the District Court's familiarity with [the Plaintiff]'s serially presented, previously litigated claims[.]").

Issue preclusion applies when "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Burlington N. R.R. Co. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)).

Defendants ask the Court to preclude Plaintiff from litigating here whether he suffered from a serious medical condition at the time of his alleged mistreatment. In *Kokinda* I, the Court held that Plaintiff did not have a serious medical condition related to ingesting soy products between the dates of September 3, 2014 and November 1, 2015 and granted defendants in that case summary judgment on the Eighth Amendment conditions of confinement claim. 2:16-cv-01303, ECF No. 173, at 17. This conclusion was based largely on Plaintiff's soy sensitivity and the fact that it could not be considered a serious medical condition. *Id*. Plaintiff now claims in the present case that he had the same serious medical condition between the dates of February 23, 2015 and March 11, 2015 and that the Defendants were deliberately indifferent to it. (ECF Nos. 7, at 5, 290, at 39).[7] The issue sought to be precluded — whether Plaintiff suffered from a serious medical condition while at SCI-Greene during the time period noted — is the same as the issue involved in *Kokinda* I.

The issue sought to be precluded was actually litigated in the prior action. "When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination and is determined, the issue is actually litigated." *ITT Corp. v. Intelnet Intern.*, 366 F.3d 205, 211, n.10 (3d Cir. 2004) (quoting Restatement (Second) of Judgments, § 27). In *Kokinda* I, Plaintiff raised the issue of whether his soy-sensitivity was a serious medical condition in his complaint. 2:16-cv-01303, ECF No. 13, at 2.[8] Defendants in *Kokinda* I then moved for summary judgment on the Plaintiff's Eighth Amendment conditions of confinement claim. 2:16-cv-01303, ECF Nos. 103,

---

[7] Plaintiff sums up his Eighth Amendment claim like so: "Despite thoroughly explaining the situation of structural starvation because Dr. Jin agreed that I should avoid soy for medical reasons ... [Defendant] Gilmore [and] [Defendant] Mills ... acted deliberately obtuse ... by refusing to help me[.]" (ECF No. 290-2, at 14). Any assertion by Plaintiff that he is not seeking to relitigate his soy-sensitivity in this case is easily dismissed. (*See* ECF No. 290, at 8).

[8] Specifically, Plaintiff states that Defendants showed "deliberate indifference to Mr. Kokinda's certainty of injury in consuming soy." *Kokinda* I, 2:16-cv-01303, ECF No. 13, at 2

110. An R. & R. was filed recommending that Defendants be granted summary judgment on the Eighth Amendment claims because, among other reasons, there was no evidence that Plaintiff's "condition was a serious medical need …." *Id.* at ECF No. 173, at 16. Plaintiff then filed objections to the R. & R., *id*. at ECF No. 174, which were considered by the undersigned. Following a *de novo* review of the record evidence, the undersigned adopted the R. & R. and granted summary judgment to the defendants on all claims, including the Eighth Amendment conditions of confinement claim. *Id*. at ECF No. 176. The issue of whether the Plaintiff suffered from a serious medical condition in the relevant time frame was actually litigated in *Kokinda* I.

The issue sought to be precluded was previously resolved against the Plaintiff in a final and valid judgment. To determine whether an issue was actually litigated, Courts in this Circuit consider "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Free Speech Coalition, Inc. v. Att'y Gen.,* 677 F.3d 519, 541 (3d Cir. 2012). In *Kokinda* I, Plaintiff appealed to the Third Circuit this Court's decision to grant summary judgment to the defendants on his Eighth Amendment claim. 2:16-cv-01303, ECF No. 184. The Third Circuit affirmed. *Id.*, ECF No. 189. Not to mention the — not one, but — three Motions for Reconsideration related to that ruling filed by the Plaintiff, *id*. at ECF Nos. 178, 180, 182, which were all considered by the undersigned and denied, *id*. at ECF Nos. 179, 181, 183.

Finally, the issue sought to be precluded was essential to the final judgment in *Kokinda* I. One of the essential elements that a plaintiff must prove to prevail on an Eighth Amendment conditions of confinement claim is that they suffered from a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Thus, concluding that Plaintiff did not suffer from a serious

medical condition was essential to the final judgment granting summary judgment to defendants in *Kokinda* I.

Issue preclusion in its most traditional form required mutuality between the parties. *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007). However, "[u]nder the modern doctrine ... a litigant may also be estopped from advancing a position that he ... has presented and lost in a prior proceeding against a different adversary." *Id*. A litigant can use defensive non-mutual issue preclusion — as Defendants seek to here — when "the party to be precluded ... had a 'full and fair' opportunity to litigate the issue in the first action." *Id*. (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979)).

The recital of *Kokinda* I's vast procedural history above leaves no doubt that Plaintiff received a "full and fair" opportunity to litigate the issue of whether he had a serious medical condition in the form of a soy allergy in that proceeding. Plaintiff amended his complaint in *Kokinda* I three times, *id*. at ECF Nos. 10, 13, 33, responded in opposition to each defendant's motion for summary judgment, *id*. at ECF No. 158, filed objections to the R. & R. granting summary judgment to the defendants, *id*. at ECF No. 174, filed three motions for reconsideration, *id*. at ECF Nos. 178, 180, 182, and appealed the decision to the Third Circuit, *id*. at ECF No. 184. Plaintiff has had, and took, his "full and fair" opportunity to litigate the issue of his soy intolerance.

Plaintiff is barred by issue preclusion from raising the Eighth Amendment conditions of confinement claim that he seeks to assert here against Defendants Gilmore and Mills. Summary Judgment could be granted to Defendants Gilmore and Mills on that conclusion alone, and it is so

granted. However, even if Plaintiff's Eighth Amendment claims are not so barred, there is also no genuine dispute of material fact related to those claims.

**2. Serious Medical Need**

A medical need is objectively serious "if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth Cnty Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)), *cert. denied*, 486 U.S. 1006 (1988).

The Eighth Amendment requires prison officials to provide inmates with "a nutritionally adequate diet …." *Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008) (unreported); *see Farmer*, 511 U.S. at 833 (holding Eighth Amendment prohibition of cruel and unusual punishment requires prison officials to "ensure that inmates receive adequate food[.]"). And "[o]nly a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim." *Jackson v. Gordon*, No. 3:03-cv-1725, 2014 WL 690643, at *11 (M.D. Pa. Feb. 24, 2014). It follows, then, that a food allergy or intolerance can only rise to the level of a serious medical need where it prevents an inmate from receiving a safe or nutritionally adequate diet. *See id.* (finding plaintiff who alleged that he was lactose intolerant had not shown a serious medical need where there was no evidence that he was not served nutritionally adequate meals); *Sweeting v. Miller*, No. 7:14-cv-187, 2015 WL 4773276, at *3 (W.D. Va. Aug. 12, 2015) ("Food allergies may, therefore give rise to a serious medical need, at least where these allergies prevent the inmate from receiving a safe

or nutritionally adequate diet."), *aff'd*, 654 F. App'x 140 (4th Cir. 2016) (unreported), *cert. denied*, 580 U.S. 1205 (2017).

Courts will not second-guess the adequacy of an inmate's diet when the plaintiff maintained a healthy weight. *See Riley v. DeCarlo*, No. 11-537, 2012 WL 4378569, at *7 (W.D. Pa. Sept. 25, 2012), *aff'd*, 532 F. App'x 23 (3d Cir. 2013) (unreported); *Jackson*, 2014 WL 690643, at *11 (considering the fact that the plaintiff "did not have significant weight loss" in granting summary judgment to prison official defendants); *Wilson v. Dragvoich*, No. Civ. A. 96-2635, 1997 WL 799431, at *4 (E.D. Pa. Dec. 31, 1997) (finding "weight loss will not amount to a constitutional violation when there is evidence that [the plaintiff] is still within the normal weight range for his sex and height."). For example, in *Riley*, the inmate-plaintiff contended that the prison-official-defendants were deliberately indifferent by starving him. 2012 WL 4378569, at *7. The Court rejected this contention, finding that the plaintiff's "allegations of having spent a protracted period of time on a semi-starvation diet simply [were] unbelievable given his healthy weight." *Id*. Summary judgment was granted to the defendants because the Court concluded that the plaintiff was receiving a nutritionally adequate diet. *Id*.

Courts around the country have considered whether a soy allergy or intolerance could give rise to a serious medical need and have held that it did not. *See, e.g., Middlebrook v. Wellman*, No. 2:21-cv-208, 2023 WL 2465551, at *8 (W.D. Mich. Jan. 3, 2023) ("[N]o reasonable juror could determine that [plaintiff]'s soy intolerance constituted a sufficiently serious medical need …."), *report and recommendation adopted*, No. 2:21-cv-208, 2023 WL 1431961, at *1 (W.D. Mich. Feb. 1, 2023); *Schlemm v. Fuchs*, 21-cv-331, 2026 WL 674218, at *7 (W.D. Wis. Mar. 10, 2026) ("[T]here is nothing in the record from which a reasonable jury could conclude that plaintiff's alleged soy allergy was an objectively serious medical condition."); *see also Riley-El v. Godinez*,

No. 13 C 8656, 2015 WL 4572322, at *3–*4 (N.D. Ill. July 27, 2015) ("[T]he alleged risks posed by consuming a soy-rich diet do not rise to the level of an Eighth Amendment violation."); *Adams v. Talbor*, No. 13-2221, 2013 WL 5940630, at *2 (C.D. Ill. Nov. 6, 2013) (finding plaintiff failed to state an Eighth Amendment conditions of confinement claim based on defendants "feeding [plaintiff] a soy-based diet ….").

Even assuming that a soy intolerance or allergy could be a serious medical condition in specific circumstances, Plaintiff has failed to advance sufficient record evidence showing that he received a nutritionally inadequate diet. On September 10, 2014 — around five months before Plaintiff entered the RHU — Plaintiff weighed 175 pounds, which was considered a healthy weight for him. (ECF No. 290-1, at 36–37). At the tail end of Plaintiff's time in the RHU (March 9, 2015), Plaintiff weighed 178 pounds, and this too was considered a healthy weight. (ECF No. 287-2, at 4). The record evidence demonstrates that Plaintiff not only maintained a healthy weight while in the RHU, but actually gained weight.

Plaintiff alleges that the Defendants starved him by not providing him with a soy-free diet. (ECF No. 290-1, at 14). This, Plaintiff claims, caused him to experience "[c]omplete exhaustion and fatigue ... requiring him to be dragged out of his cell ... because he lacked the strength and coordination to walk." (ECF No. 290, at 11–12). Plaintiff's bald assertion that he was starved is "unbelievable given his healthy weight." *Riley*, 2012 WL 4378569, at *7; *see generally Hena v. Vandergrift*, 612 F. Supp. 3d 457, 472 (W.D. Pa. 2020) (holding that assertions "unsubstantiated by record evidence will not defeat a well-supported motion for summary judgment.") The record

evidence demonstrates that Plaintiff was provided a nutritionally adequate diet and that his soy intolerance was not a hinderance to that accomplishment. *See Riley*, 2012 WL 4378569, at *7.

The Court concludes that there is no genuine dispute of material fact that Plaintiff did not suffer from a serious medical condition while he was housed in the RHU.

### 3. Deliberate Indifference

Deliberate indifference is proven upon a showing that the official was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and to 'also draw that inference.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994)). The Third Circuit has found deliberate indifference in a variety of situations:

> where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs.

*Pearson*, 850 F.3d at 538 (citing *Lanzaro*, 834 F.2d at 347). Additionally, a prison official acts with deliberate indifference when they intentionally deny or delay "access to medical care … once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

The calculus is different when determining whether a *non-medical* prison official was deliberately indifferent with regard to an inmate's medical care. "If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Unless there is a reason to believe that prison medical personnel "are mistreating (or not treating) a prisoner, a non-medical prison official … will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Pendleton v. Tice*, No. 3:19-cv-38, 2020 WL 14034198, at * 1 (W.D.

Pa. Feb. 4, 2020) (quoting *Spruill*, 372 F.3d at 236), *report and recommendation adopted*, No. 3:19-cv-38, 2020 WL 14034199, at *1 (W.D. Pa. Mar. 30, 2020).

As we move into the subjective part of the analysis it is appropriate to catalog the knowledge that Defendants Gilmore and Mills had while Plaintiff was in the RHU.

Beginning with Defendant Gilmore, Plaintiff provided the Court with a "Facility Manager's Appeal Response" dated December 2, 2014 — almost ninety days before Plaintiff was housed in the RHU. (ECF No. 290-1, at 33). Defendant Gilmore was responding to a grievance Plaintiff filed because the prison doctor — Dr. Jin — refused to provide Plaintiff with a no-soy diet. In the Appeal Response, Defendant Gilmore noted that Plaintiff had never been ordered a no-soy diet; that the prison doctor diagnosed Plaintiff with "more of an intolerance than an allergy[;]" and that Plaintiff was weighed on September 30, 2014 and was considered a healthy weight. (*Id.*). The record evidence shows that when Plaintiff was in the RHU, Defendant Gilmore knew that Plaintiff had been seen by the prison doctor; that the prison doctor did not order a no-soy diet for the Plaintiff; and that Plaintiff was — as of September 2014 — a healthy weight. (*Id.*).

As evidence of Defendant Gilmore's deliberate indifference, Plaintiff points to a telephone conversation Defendant Gilmore had with the Plaintiff's mother while the Plaintiff was in the RHU. Plaintiff's mother told Defendant Gilmore that Plaintiff had explained to her that "the guards [were] falsely marking that [Plaintiff] was eating his trays and denying him the ability to sustain himself on the commissary diet as he had been." (ECF No. 290-1, at 23). In response, Defendant Gilmore allegedly said that Plaintiff "is a grown man and can decide for himself whether or not he wants to eat." (*Id.*, at 24). Further, Defendant Gilmore is alleged to have said "that they would

force a feeding tube down [Plaintiff]'s throat if he lost enough weight, and he did not want to discuss the matter any further." (*Id.*).

The claims against Defendant Gilmore fall directly under the *Spruill* rule that non-medical prison officials will be justified in concluding that an inmate is in the capable hands of prison medical personnel. *See* 372 F.3d at 236. A few months before Plaintiff entered the RHU, Defendant Gilmore cited his reliance on the prison doctor's finding that a no-soy diet was unnecessary for the Plaintiff. (ECF No. 290-1, at 33). There is no evidence that Defendant Gilmore had "a reason to believe (or actual knowledge) that prison doctors or their assistants [were] mistreating (or not treating)" Plaintiff. *See Spruill*, 372 F.3d at 236. In fact, Plaintiff was treated by two different medical professionals while in the RHU, and neither determined that a soy-free diet was necessary. (ECF No. 287-2, at 3–4). Plaintiff has failed to raise a genuine dispute of material fact that Defendant Gilmore acted deliberately indifferent to any serious medical need Plaintiff may have had.

That brings us to Defendant Mills, who is a registered nurse. Defendant Mills examined Plaintiff on his second day in the RHU — February 24, 2015. (ECF No. 287-2, at 3). Plaintiff told Defendant Mills, "I haven't eaten anything for 4 days, I'm weak [and] need IV's." (*Id.*). In response, Defendant Mills asked "if there was fruit, milk or vegetables on the tray that the [Plaintiff] could eat." (*Id.*).[9] Defendant Mills then prescribed Plaintiff with 400 mg of Ibuprofen

[9] At this point, there is a dispute of fact as to what actually occurred next. If you go by Defendant Mills' Progress Notes, Plaintiff refused to answer her questions. (ECF No. 287-2, at 3). But Plaintiff denies having refused to answer any of Defendant Mills' questions. (ECF No. 290-2, at 2). Of course, at the summary judgment stage, the Court must view "the evidence in the light most favorable to the nonmoving party and draw[] all inferences in favor of that party[.]" *Woodson v. Sheesley*, No. 23-2942, 2025 WL 2159091, at *1 (3d Cir. July 30, 2025). But for the reasons noted above and below, any such dispute is not material.

and a few tabs of Tums, while noting that the Plaintiff "was already on sick call for today" and would be seen by another medical professional — which he was. (*Id.*).

Plaintiff also alleges that after he "had blacked out and injured [himself] when [he] fell in [his] RHU cell due to exhaustion from the structural starvation, RN Mills said that the guards were already falsely marking that [he] was eating the trays." (ECF No. 290-1, at 15).[10] Believing, as we must, that Defendant Mills told Plaintiff that the guards were falsely marking that Plaintiff was eating his trays of food, this still does not show that Defendant Mills was deliberately indifferent to Plaintiff's serious medical needs. In this formulation, Defendant Mills already knew Plaintiff was not eating because he told her as much during her evaluation of him. (ECF No. 287-2, at 3). Defendant Mills then determined that the best course of action was to prescribe Tums and ibuprofen. (*Id.*). This was likely in response to the "debilitating myalgia" and "severe acid reflux" that Plaintiff alleges were common symptoms he experienced after eating "soy-adulterated foods[.]" (ECF No. 290-1, at 9).

To the extent that Plaintiff disagreed with the course of treatment that Defendant Mills provided, "mere disagreement as to the proper medical treatment" is insufficient to prove deliberate indifference. *See Lanzaro*, 834 F.2d at 346. And there are no specific facts Plaintiff can point to that show Defendant Mills "den[ied] reasonable requests for medical treatment" or had "knowledge of the need for medical care" and intentionally refused to provide it. *See Spruill*, 372 F.3d at 235. This is especially true in light of the fact that in her Progress Notes, Defendant Mills

[10] There is no evidence that Plaintiff was ever seen for this alleged fall by prison medical personnel. The record shows that Plaintiff was seen by Defendant Mills on February 24, 2015 at 2:15 AM and then again that same day at 12:21 PM by Physicians Assistant Elon Mwaura. (ECF No. 287-2, at 3–4). Plaintiff was seen again on his second-to-last day in the RHU (March 9, 2015), again by PA Mwaura, and Plaintiff was adjudged to be a healthy weight of 178 pounds. (*Id.*). On March 10, 2015 Plaintiff was seen by PSA Fredrick Waine Jr. who noted that the "CO states that trays have been checked, [Plaintiff] has been eating." (ECF No. 287-2, at 5). Nowhere in the record, besides Plaintiff's say-so, is there any indication that a medical professional at SCI-Greene was told that Plaintiff had fallen in his cell, let alone that Defendant Mills had any knowledge of this fact.

noted that Plaintiff would be seen by another medical professional later that same day, who concluded that a "soy-free diet" was "unnecessary[.]" (ECF No. 287-2, at 4).

Neither did Defendant Mills interfere with Plaintiff's medical care "once prescribed." *See Estelle*, 429 U.S. at 104–05. Time and time again the record evidence shows that Plaintiff was never prescribed a soy-free diet. (ECF Nos. 287-2, at 4, 290-1, at 33, 37). So, the fact that Defendant Mills did not provide Plaintiff with a soy-free diet does not show deliberate indifference on her part. *See Estelle*, 429 U.S. at 104–05. In fact, the record shows that Defendant Mills took the time to try and discuss with Plaintiff the food on his tray that he could eat. (ECF No. 287-2, at 3).

Defendants have established that there is no genuine dispute of material fact that Defendants Gilmore or Mills did not act with deliberate indifference towards Plaintiff's serious medical needs — to the extent he even had any (which as noted above he did not, based on both the record evidence in this case, and on the preclusive effect of the Court's prior holding in *Kokinda v. Pa. Dep't of Corrs.* (*Kokinda* I), 2:16-cv-01303 (W.D. Pa. Aug. 26, 2016)). For each of the reasons noted above, Defendants Gilmore and Mills' Motion for Summary Judgment on Plaintiff's Eighth Amendment conditions of confinement claim is granted.

**B. <u>First Amendment Retaliation</u>**

A First Amendment Retaliation claim has three elements: (1) "that the conduct which led to the alleged retaliation was constitutionally protected[;]" (2) that the plaintiff "suffered some 'adverse action' at the hands of the prison officials[;]" and (3) that there was a "causal link"

between the constitutionally protected conduct and the adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

"We recognize that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials, who possess the necessary expertise." *Id.* at 334. A "prison regulation that impinges on the constitutional rights of an inmate is valid if it is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Plaintiff's retaliation argument can be boiled down to this: Defendant Gibson and Defendant Sanders supposedly retaliated against Plaintiff for filing a grievance and a lawsuit by searching his cell, transferring him to the RHU, and charging him with a misconduct.

**1. Constitutionally Protected Activity**

At different times, Plaintiff alleges that his constitutionally protected conduct was (a) filing a grievance, (b) filing lawsuits, and/or (c) collecting petitions from other inmates. (*See* ECF No. 290, at 4,[11] 19.[12]).

As a general matter, filing a prison grievance and filing lawsuits are both well-accepted constitutionally protected activities. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) ("[F]iling … a grievance does 'implicate[] conduct protected by the First Amendment.'") (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)), *cert. denied*, 582 U.S. 930 (2017); *Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011) (unreported) ("Indeed, the filing of grievances and

[11] "[Defendants] maliciously filed what they knew to be false misconduct charges as retaliation for Mr. Kokinda's grievances and litigation, and the collection of the affidavits themselves." (ECF No. 290, at 4).

[12] "Defendants retaliated against Mr. Kokinda's First Amendment right to gather affidavits of witnesses for his lawsuits[.]" (ECF No. 290, at 19).

lawsuits against prison officials constitutes constitutionally protected activity.") (citing *Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981)).

Plaintiff argues that collecting affidavits from other inmates is also a constitutionally protected activity. (ECF No. 290, at 13). For this proposition, Plaintiff cites *Wolff v. McDonnell*, 418 U.S. 539 (1974), which holds the opposite: "[P]rison officials must have the necessary discretion … to limit access to other inmates to collect statements or to compile other documentary evidence." *Id*. at 566. To the extent that Plaintiff argues his action of collecting affidavits was a constitutionally protected activity, he is mistaken.

Nonetheless, Plaintiff has advanced sufficient record evidence that he was engaged in two constitutionally protected activities — his filing of the February 12, 2015 grievance and the filing of the February 10, 2015 lawsuit. So, we proceed to the next step in the analysis.

**2. Adverse Action**

Next, Plaintiff must advance sufficient evidence that could prove that he suffered an adverse action. Generally, "a prisoner-plaintiff satisfies this requirement by demonstrating that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional]

rights." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).

Plaintiff contends that Defendants Gibson and Sanders took the following adverse actions against him: searching Plaintiff's cell, confiscating Plaintiff's belongings, and charging Plaintiff with a misconduct. (*See* ECF No. 290, at 12,[13] 19[14]).

A misconduct charge satisfies the adverse action element of a retaliation claim. *See Watson*, 834 F.3d at 423 ("[Plaintiff] clearly suffered an adverse consequence when [the defendant] charged him with a … misconduct.").

But Courts within the Third Circuit disagree on whether a cell search and confiscation of materials are sufficient adverse actions. *Compare Curtician v. Kessler*, No. 07-286, 2010 WL 6557099, at *7 (W.D. Pa. Nov. 29, 2010) ("[C]ourts have consistently held that a cell search is not an 'adverse action' for retaliation purposes.") (citing *Brooks v. Smith*, No. 3:cv-04-2680, 2007 WL 3275266, at *2 (M.D. Pa. Nov. 6, 2007)), *report and recommendation adopted*, No. 1:07-cv-286, 2011 WL 1542682, at *1 (W.D. Pa. Apr. 25, 2011) *with Humphrey v. Sec. Pa. Dep't of Corrs.*, 712 F. App'x 122, 125 (3d Cir. 2017) (unreported) (finding at motion-to-dismiss stage "retaliatory search and seizure may be sufficient to satisfy" adverse action prong) *and Page-Jones v. Berfield*, No. 1:20-cv-1042, 2021 WL 5906107, at *6 (M.D. Pa. Dec.14, 2021) (holding that confiscation of personal property may constitute adverse action "if motivated solely by a retaliatory motive.").

While the misconduct charge issued on February 24, 2015 is an adverse action, the search of Plaintiff's cell on February 20, 2015 is a closer call. But a call the Court need not make now, because the Plaintiff has failed to satisfy his burden on the third and final element — the causal

---

[13] "The misconduct charges were facially malicious." (ECF No. 290, at 12).

[14] "[D]efendants retaliated against [Plaintiff] … by immediately confiscating the evidence that implicated them and confining him in the RHU under facially malicious charges." (ECF No. 290, at 19).

link — even if having one's cell searched and materials confiscated are considered to be adverse actions for these purposes.

**3. Causal Link**

The Plaintiff must prove a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Rauser*, 241 F.3d at 333. In the Third Circuit, the plaintiff bears

> the initial burden of proving that his constitutionally protected conduct was "a substantial or motivating factor" in the decision to discipline him. The burden then shift[s] to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity.

*Id.* (internal citations omitted) (joining "the several circuits that have imported the *Mount Healthy* [*City Sch. Dist. Bd. of Edu. v. Doyle*, 429 U.S. 274 (1977)] burden-shifting framework into the prison context."). The latter half of this analysis is colloquially called the "same decision defense." *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

**a. Substantial or Motiving Factor**

There are two threshold questions that must be answered before determining whether a plaintiff's constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.

First, the plaintiff must provide sufficient evidence to support a finding that the defendant was *personally involved* in the alleged retaliation. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs[.]"); *DeFranco v. Miller*, No. 20-368, 2024 WL 208208, at *3 (W.D. Pa. Jan. 18, 2024); *Riley v. DeCarlo*, No. 11-537, 2012 WL 4378569, at *3 (W.D. Pa. Sept. 25, 2012), *aff'd*, 532 F. App'x 23 (3d Cir. 2013) (unreported). For example, in *DeFranco*, this Court considered whether

there was sufficient evidence of two defendants' personal involvement in alleged retaliation against a plaintiff. 2024 WL 208208, at *3. There, one correctional officer-defendant filed the allegedly retaliatory misconduct report, while the other was listed as a witness in-support of the misconduct charge. *Id*. Both of those actions supported a finding that each defendant was personally involved in the retaliation against the plaintiff, such that the plaintiff's retaliation claims against them could proceed to a jury. *Id*.

Second, the plaintiff must show that the defendant was aware of the protected activity. *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002). Simply put: If protected conduct is a "substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Id*. at 493. And while the causal link can be proven through "unusually suggestive" temporal proximity, *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000), temporal proximity cannot "be used to show that [a defendant] was aware of the protected conduct in the first place." *Ambrose*, 303 F.3d at 494.

Plaintiff argues that the temporal proximity between the adverse action he faced, and his constitutionally protected activities proves the casual link in this case. (ECF No. 290, at 19). However, in doing so, Plaintiff presupposes that he has provided sufficient facts to support the findings that Defendants Gibson and Sanders were both (a) personally involved in the alleged retaliation that Plaintiff faced and (b) aware of Plaintiff's constitutionally protected activities. Before the Court can consider temporal proximity, there must be sufficient proof of both personal involvement and knowledge on behalf of Defendants Gibson and Sanders.

In Plaintiff's Affidavit, attached as an exhibit to his Response to Defendants' Motion for Summary Judgment, he claims that Defendants Gibson and Sanders searched his cell. (ECF No. 290-1, at 12). This cell search led to Plaintiff being charged with a misconduct and transferred to

the RHU. While the Court is required to draw all reasonable inferences in Plaintiff's favor, it is not required to accept "[u]nsupported assertions, conclusory allegations, or mere suspicions …." *Betts v. New Castle Youth Development Cntr.*, 621 F.3d 249, 252 (3d Cir. 2010), *cert. denied*, 562 U.S. 1272 (2011).

The Court will now consider, one at a time, the record evidence that supposedly supports Defendants Gibson and Sanders' personal involvement in the alleged retaliation against Plaintiff. If there is sufficient record evidence to support a jury finding of their personal involvement, the question then becomes whether each such Defendant had the requisite knowledge of Plaintiff's constitutionally protected activities, such that these activities could be a substantial or motivating factor in the decision to discipline him.

i. Personal Involvement

While Plaintiff has shown enough facts to support the finding that Defendant Sanders was personally involved in the alleged retaliation against Plaintiff, he fails to make this showing against Defendant Gibson.

There were two potentially adverse actions that were taken against Plaintiff: having his cell searched and being charged with a misconduct. Plaintiff fails to provide sufficient record evidence that Defendant Gibson was personally involved in either of these actions.

Plaintiff asserts that Defendant Gibson searched his cell. (ECF No. 290-1, at 12). However, this assertion is unsupported by the record. In fact, the record evidence reveals that a few days after having his cell searched, Plaintiff had no idea who searched his cell. In a grievance Plaintiff filed after being transferred to the RHU, he claims that Defendant Gibson directed "two *unidentified* COs" to search his cell and confiscate his writings. (ECF No. 287-7, at 2) (emphasis added). Plaintiff has, apparently, dropped this allegation that Defendant Gibson simply directed

other prison officials to search his cell and has decided that Defendant Gibson participated in the actual searching. Fatally, Plaintiff points to no record evidence to support this allegation. Plaintiff's unsupported assertion that Defendant Gibson searched his cell is insufficient to overcome the Defendants' Motion for Summary Judgment. *See generally Betts*, 621 F.3d at 252 ("Unsupported assertions … are insufficient to overcome a motion for summary judgment.").

Plaintiff also fails to point to any facts that would support a finding that Defendant Gibson was involved in charging Plaintiff with a misconduct. Unlike the defendants in *DeFranco*, Defendant Gibson was neither the correctional officer charging Plaintiff with the misconduct, nor listed as a witness in-support of the misconduct charge. *See* 2024 WL 208208, at *3. Therefore, there is insufficient evidence to support a jury finding that Defendant Gibson was personally involved in charging Plaintiff with a misconduct.

That leaves Defendant Sanders. Like the correctional officer-defendant in *DeFranco*, Defendant Sanders was listed as a witness on the misconduct charge lodged against Plaintiff. *See* 2024 WL 208208, at *3. There is, then, sufficient evidence to support the finding that Defendant Sanders was personally involved in the alleged retaliation against Plaintiff. *See id*.

Putting personal involvement aside, the Court will now consider whether there is sufficient evidence supporting the finding that Defendants Gibson and Sanders knew of the Plaintiff's protected activities before supposedly impermissibly retaliating against him.

ii. Knowledge

There is insufficient evidence to support a finding that at the time Defendants Gibson and Sanders allegedly disciplined Plaintiff, they each *knew* of Plaintiff's constitutionally protected activities. As the Court concluded above, Plaintiff was allegedly engaged in two constitutionally protected activities: (1) the filing of his February 10, 2015, lawsuit against various prison officials,

and (2) the filing of his February 12, 2015, grievance against various prison officials. Neither Defendant was named in the lawsuit nor the grievance.

Let us start with Plaintiff's February 10, 2015 lawsuit. On the day he was transferred to the RHU, Plaintiff was collecting "affidavits" from other inmates to support his pending lawsuit against Dr. Jin. (ECF No. 290-1, at 11). In his filing opposing Defendants' Motion for Summary Judgment, Plaintiff stated: "I *reasonably believe* that [an inmate] had told [Correctional Officer] Pegram[15] about the affidavit and that he had coordinated with a prisoner named Black to obtain a copy of it …." (*Id.*) (emphasis added).[16] It was apparently at this point, after a different correctional officer received a copy of the affidavit from "Black," that according to Plaintiff, Defendants Gibson and Sanders became aware of Plaintiff's lawsuit, decided to search his cell, and charged him with a misconduct. Plaintiff believes that just because the confiscated affidavit "implicate[d]" the Defendants, they must have known about his lawsuit before searching Plaintiff's cell. (ECF No. 290, at 16).

But this contention is based purely on Plaintiff's "reasonable belie[f]" alone. (*Id.*). Plaintiff does not point to any specific facts, supported by the record, showing that the Defendants ever saw one of these "affidavits" before searching Plaintiff's cell or had any knowledge of Plaintiff's pending lawsuit. Plaintiff's subjective belief, unattached to actual evidence, is insufficient to raise a genuine dispute of material fact. *See generally In re Jackson*, 92 B.R. 987, 991 (E.D. Pa. 1988) ("F.R. Civ. P 56(e) requires that an affidavit in support of summary judgment be made on personal knowledge"); *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) ("An affidavit that is 'essentially conclusory' and lacking in specific facts is inadequate to satisfy the movant's

---

[15] CO Pegram was removed from this action as a Defendant on February 3, 2026.

[16] This quote, like most of Plaintiff's evidence, comes from an Affidavit Plaintiff submitted as an Exhibit to his Response to Defendants' Motion for Summary Judgment. (*See* ECF No. 290-1).

burden.") (quoting *Drexel v. Union Prescription Cents. Inc.*, 582 F.2d 781, 789–90 (3d Cir. 1978)). Plaintiff fails to point to sufficient record facts to support a finding that the Defendants knew of Plaintiff's lawsuit before discipling him.

Turning to Plaintiff's next constitutionally protected activity, the grievance he filed, Plaintiff again argues that the existence of this grievance, and the fact that it potentially implicated the Defendants, proves that they knew of it. The Court cannot assume, as Plaintiff does, that just because Plaintiff filed a grievance, these specific Defendants must have known about it. Plaintiff simply speculates that the Defendants knew of his grievance. This speculation is insufficient to defeat the Defendants' Motion for Summary Judgment. *See generally Power v. Hewlett-Packard Co.*, No. 2:17-cv-154, 2024 WL 4040432, at *4 (W.D. Pa. July 19, 2024) (holding that "speculation or conjecture" will not defeat a motion for summary judgment).

Without providing sufficient record evidence to support a finding that Defendants Gibson and Sanders knew of Plaintiff's constitutionally protected activities, a jury could not conclude that Plaintiff's activities were a "substantial or motivating factor" in the decision to discipline him. *See Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002). In other words: Plaintiff cannot establish the causal link between his constitutionally protected activities and the adverse action he faced.

**b. Same Decision Defense**

Even if Plaintiff had met his burden, his retaliation claims fail under the "same decision defense." "[M]ost prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence." *Watson v. Rozum*, 834 F. 3d 417, 425 (3d Cir. 2016), *cert. denied*, 582 U.S. 930 (2017). The Defendant's burden here is to be able to prove "that the same decision would have been made even absent any retaliatory motive." *Id.* at 426. A defendant must point to a sufficient

"quantum of evidence" to show that the conduct giving rise to the misconduct was "clear and overt." *Id*. (citing *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002)). A finding of guilt along with "a meaningful written statement of the evidence relied on and the reasons for the action taken, establishe[s] a quantum of evidence of misconduct sufficient to warrant summary judgment." *Hill v. Barnacle*, 509 F. Supp. 3d 380, 398 (W.D. Pa. 2020) (quoting *Harris v. Giroux*, No. 1:16-cv-38, 2019 WL 330459, at *10 (W.D. Pa. Jan 25, 2019)).

Here, Plaintiff was found guilty in the prison disciplinary proceedings of "engaging in, or encouraging group activity." (ECF No. 287–4, at 3). In the Disciplinary Hearing Report, the HEX[17] noted that she considered the Plaintiff's own statements that "he made affidavits and asked inmates if they wanted to be a witness in his law suit" and that he "got about a dozen to sign and took them back to his cell." (*Id*.). The HEX found that the affidavits Plaintiff was collecting were form letters that the Plaintiff was "circulating among a group of inmates, thus encouraging group activity." (*Id*.). Indeed, in his brief, Plaintiff admitted to committing the conduct giving rise to the misconduct charge: "Mr. Kokinda was sitting down with individual prisoners in the law library … and explaining the process to ensure the prisoners understood the potential to be called as witnesses in his lawsuits." (ECF No. 290, at 14).[18]

Defendants have established and advanced a quantum of evidence showing a clear and overt violation of SCI-Greene's policy as a matter of law. *See Hill*, 509 F. Supp. 3d, at 398; *cf. Watson*, 834 F.3d at 424–25 (finding violation was not clear and overt where plaintiff was told "he was being written up for giving [correctional officers] a 'hard time' and for not being 'polite.'").

[17] HEX stands for Hearing Examiner.

[18] The remaining Misconduct charges (Possession/Circulation of an Unauthorized Petition; Possession of Contraband Property of Another; Possession of Any Item Not Authorized for Retention not specifically enumerated as a Class 1 Contraband and; Any Violation of a Rule or Regulation Not Specified as a Class 1 Charge) were all dismissed by the HEX, but arise out of the same conduct Plaintiff admits to. (ECF No. 287-4, at 3). The HEX did not give any reason for dismissing these charges. (*Id*.).

The decision to search Plaintiff's cell, charge him with a misconduct, and move him to the RHU was well "within the 'broad discretion' that we must afford" prison officials. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002). Mainly, "the necessary discretion … to limit access to other inmates to collect statements or to compile other documentary evidence." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

Plaintiff has not met his burden of advancing sufficient record evidence that there was a causal link between his constitutionally protected activity and the adverse actions taken against him. Even if he had, the Defendants have established as a matter of law — through the help of the Plaintiff himself — that they would have made the same decision to discipline him absent any retaliatory motivation, which, again, he has not established in the first place.

Defendants have established that there is no genuine dispute of material fact that the record does not support Plaintiff's First Amendment retaliation claim against Defendants Gibson and Sanders, and summary judgment is granted to Defendants on that claim.

## V. <u>CONCLUSION</u>

Defendants have established that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law as to all remaining claims against them. Plaintiff's Eighth Amendment conditions of confinement claim is barred by this Court's prior decision holding that during the relevant time period Plaintiff did not suffer from a serious medical need. Notwithstanding issue preclusion, the record before the Court demonstrates that Plaintiff cannot prevail on a claim that Defendants Mills and Gilmore acted deliberately indifferent to Plaintiff's serious medical needs. Plaintiff's retaliation claims against Defendants Gibson and Sanders fail for many reasons. Mainly, Plaintiff failed to present sufficient evidence to support a jury finding that Defendants Gibson and Sanders knew of his constitutionally protected activities. Without

knowledge of these activities, Defendants Gibson and Sanders could not have been motivated by an unlawful retaliatory motivation in taking adverse action against Plaintiff.

Defendants' Motion for Summary Judgment is granted in full.

An appropriate Order will issue.

/s/ Mark R. Hornak
Mark R. Hornak
United States District Judge

Dated: October 7, 2026